HAILYN J. CHEN (State Bar No. 237436)
hailyn.chen@mto.com
ASHLEY D. KAPLAN (State Bar No. 293443)
ashley.kaplan@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Defendant THE REGENTS
OF THE UNIVERSITY OF
CALIFORNIA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>    vs.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; and DOES 1-20, inclusive,<br><br>       Defendants. | Case No. 2:19-CV-10385-PSG-MRW<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF JOHN DOE'S COMPLAINT**<br><br>Judge:  Hon. Philip S. Gutierrez<br>Date:  April 13, 2020<br>Time:  1:30 P.M.<br>Courtroom:  6A |

1   TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on April 13, 2020, at 1:30 p.m., or as soon

3   thereafter as the matter may be heard, in Courtroom 6A of this Court, located at 350

4   West 1st Street, Los Angeles, California 90012, Defendant The Regents of the

5   University of California ("the University") will move pursuant to Federal Rule of

6   Civil Procedure 12(b)(6) and 12(b)(1) for an order dismissing all claims in

7   Plaintiff's Complaint with prejudice.  (ECF No. 1.)

8       This motion is made following the conference of counsel pursuant to Local

9   Rule 7-3, which took place telephonically on February 5, 2020.

10      The University bases its motion on this notice of motion, the attached

11  memorandum of points and authorities, and the proposed order.

12  DATED:  February 13, 2020          MUNGER, TOLLES & OLSON LLP
                                        HAILYN J. CHEN
13                                      ASHLEY D. KAPLAN

14

15

16                                  By:  _____*/s/ Ashley D. Kaplan*_____
                                        ASHLEY D. KAPLAN
17                                      Attorneys for Defendant The Regents of the
                                        University of California
18

19

20  .

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF JOHN DOE'S COMPLAINT

HAILYN J. CHEN (State Bar No. 237436)
hailyn.chen@mto.com
ASHLEY D. KAPLAN (State Bar No. 293443)
ashley.kaplan@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Defendant THE REGENTS
OF THE UNIVERSITY OF
CALIFORNIA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>            Plaintiff,<br><br>       vs.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; and DOES 1-20, inclusive,<br><br>            Defendants. | Case No. 2:19-CV-10385-PSG-MRW<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF JOHN DOE'S COMPLAINT**<br><br>Judge:  Hon. Philip S. Gutierrez<br>Date:  April 13, 2020<br>Time:  1:30 P.M.<br>Courtroom: 6A |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................... 2

    A.   The February 13, 2017 Incident ................................................ 2

    B.   University Investigation ............................................................. 3

    C.   Student Conduct Determination and Suspension ...................... 4

    D.   Plaintiff's Administrative Appeal ............................................. 4

    E.   Plaintiff's Writ of Administrative Mandate Proceeding ........... 5

    F.   Plaintiff's Claims ...................................................................... 5

        1.   Plaintiff Asserts Claims of Sex Discrimination Under Title IX ................................................................................... 5

        2.   Plaintiff Asserts Various Other Federal and State Claims .......... 6

III.  LEGAL STANDARD ......................................................................... 7

IV.  ARGUMENT ...................................................................................... 7

    A.   Plaintiff's Title IX Claims Should Be Dismissed Because He Fails to Adequately Plead Gender Bias ................................. 7

        1.   Plaintiff Fails to Plead a Plausible Erroneous Outcome Claim ................................................................................ 8

        2.   Plaintiff Fails to Plead a Selective-Enforcement Claim ............ 14

    B.   Plaintiff's § 1983 Claim and State-Law Claims Are Barred by the Eleventh Amendment ................................................. 16

        1.   Plaintiff's § 1983 Claim Is Barred by the Eleventh Amendment ..................................................................... 16

        2.   Plaintiff's State-Law Claims Are Barred by the Eleventh Amendment ..................................................................... 16

V.   CONCLUSION ................................................................................. 17

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF JOHN DOE'S COMPLAINT

1

# <u>TABLE OF AUTHORITIES</u>

2
<u>Page</u>

**FEDERAL CASES**

3

4
*Armstrong v. Myers*,
  964 F.2d 948 (9th Cir. 1992) (*per curiam*)..........................................................16

5

6
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................7

7

8
*Austin v. University of Oregon*,
  925 F.3d 1133 (9th Cir. 2019)..................................................................1, passim

9

10
*Austin v. University of Oregon*,
  No. 6:15-CV-02257-MIC, 2017 WL 4621802 (D. Or. June 7, 2017),
  *aff'd*, 925 F.3d 1133 (9th Cir. 2019) ....................................................................12

11

12
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................15

13

14
*BV Engineering v. University of California, Los Angeles*,
  858 F.2d 1394 (9th Cir. 1988) .........................................................................16, 17

15

16
*Cousins v. Lockyer*,
  568 F.3d 1063 (9th Cir. 2009) ................................................................................7

17

18
*Doe v. Columbia College Chicago*,
  933 F.3d 849 (7th Cir. 2019)......................................................................9, 10, 12

19

20
*Doe v. Cummins*,
  662 F. App'x 437 (6th Cir. 2016) .........................................................................10

21

22
*Doe v. Loh*,
  No. PX-16-3314, 2018 WL 1535495 (D. Md. Mar. 29, 2018) ............................10

23

24
*Doe v. Purdue University*,
  928 F.3d 652 (7th Cir. 2019) ...............................................................................10

25
*Doe v. Regents of the University of California*,
  891 F.3d 1147 (9th Cir. 2018) .........................................................................16, 17

26

27
*Doe v. Regents of the University of California*,
  No. 2:15-CV-02478-SVW-JEM, 2015 WL 13755510 (C.D. Cal.
  Dec. 14, 2015) .......................................................................................................14

28

1

2

**TABLE OF AUTHORITIES**
(Continued)

**Page**

3

*Doe v. Trustees of Boston College*,
    892 F.3d 67 (1st Cir. 2018) ................................................................. 10

4

5

*Doe v. Univ. of Colorado, Boulder through Board of Regents of the
    University of Colorado*,

6

    255 F. Supp. 3d 1064 (D. Colo. 2017) ................................................. 11

7

*Doe v. University of St. Thomas*,

8

    240 F. Supp. 3d 984 (D. Minn. 2017) ................................................. 10

9

*Doe v. Washington University*,

10

    No. 4:19 CV 300 (JMB), 2020 WL 353587 (E.D. Mo. Jan. 21,
    2020) ................................................................................................... 13

11

12

*Gant v. County of Los Angeles*,
    772 F.3d 608 (9th Cir. 2014) ................................................................. 7

13

14

*Ileto v. Glock Inc.*,
    349 F.3d 1191 (9th Cir. 2003) ............................................................... 7

15

16

*Jackson v. Hayakawa*,
    682 F.2d 1344 (9th Cir. 1982) ............................................................. 16

17

18

*King v. Depauw University*,
    No. 2:14-CV-70-WTL-DKL, 2014 WL 4197507 (S.D. Ind. Aug. 22,
    2014) ................................................................................................... 15

19

20

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ............................................................... 7

21

22

*Mendiondo v. Centinela Hospital Medical Center*,
    521 F.3d 1097 (9th Cir. 2008) ............................................................... 7

23

24

*Pennhurst State School & Hospital v. Halderman*,
    465 U.S. 89 (1984) .............................................................................. 16

25

26

*Ruff v. Board of Regents of the University of New Mexico*,
    272 F. Supp. 3d 1289 (D.N.M. 2017) .................................................. 11

27

28

-iii-

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Schwake v. Arizona Board of Regents*,
    No. CV-15-00696-PHX-SPL, 2018 WL 1536388 (D. Ariz. Mar. 29,
    2018) .................................................................................................. 8

*Stanley v. Trustees of California State University*,
    433 F.3d 1129 (9th Cir. 2006) .............................................................. 17

*Steshenko v. Albee*,
    42 F. Supp. 3d 1281 (N.D. Cal. 2014)................................................... 17

*Thompson v. City of Los Angeles*,
    885 F.2d 1439 (9th Cir. 1989), *overruled on other grounds by Bull*
    *v. City of L.A.*, 595 F.3d 964 (9th Cir. 2010)........................................ 16

*Will v. Michigan Department of State Police*,
    491 U.S. 58 (1989) ............................................................................. 16

*Xiaolu Peter Yu v. Vassar College*,
    97 F. Supp. 3d 448 (S.D.N.Y. 2015) .................................................... 14

*Yusuf v. Vassar College*,
    35 F.3d 709 (2d Cir. 1994) ........................................................ 8, 9, 14

*Z.J. v. Vanderbilt University*,
    355 F. Supp. 3d 646 (M.D. Tenn. 2018) .............................................. 11

STATE CASES

*John Doe v. The Regents of the University of California*,
    Case No. BS172217 (L.A. Super. Ct.) ..................................................... 5

FEDERAL STATUTES

20 U.S.C. § 1681.................................................................................. 1, passim

42 U.S.C. § 1983.......................................................................... 1, 2, 6, 16

Federal Rule of Civil Procedure 8(a)..................................................................... 7

Federal Rule of Civil Procedure 12(b)(1)............................................................... 7

Federal Rule of Civil Procedure 12(b)(6)............................................................... 7

# TABLE OF AUTHORITIES
### (Continued)

**Page**

**STATE STATUTES**

Cal. Code Civ. Proc. § 1094.5 ......................................................... 5, 17

California's Unruh Civil Rights Act, Cal. Civ. Code § 51 ......................... 1, 6, 16, 17

**FEDERAL CONSTITUTIONAL PROVISIONS**

Eleventh Amendment ........................................................... 1, 16, 17

Fourteenth Amendment ............................................................ 1, 16

## I.      INTRODUCTION

Plaintiff John Doe, a former international graduate student at University of California, Los Angeles ("UCLA"), alleges that The Regents of the University of California ("the University") discriminated against him on the basis of his gender in initiating and pursuing a Title IX investigation and adjudication against him and sanctioning him with a two-year suspension for dating violence, a violation of the University's Policy for Sexual Violence and Sexual Harassment.

The Ninth Circuit has held that to adequately plead Title IX claims for discrimination based on "erroneous outcome" and "selective enforcement" theories, the two Title IX claims Plaintiff asserts here, a plaintiff must articulate some basis "to discern that the administration or outcomes of the disciplinary proceedings were flawed due to the [plaintiff's] sex" and must assert "nonconclusory allegations that the male students were treated . . . differently than similarly situated female students based on sex." *Austin v. Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019).  Plaintiff has done neither.  Instead, he alleges only that federal guidance requiring universities across the country to address campus sexual misconduct exerted "pressure" on the University here, but Plaintiff fails to draw any plausible link between such pressure, his gender, and the outcome of his misconduct proceeding. He also fails to allege anything that plausibly demonstrates that the University's actions were motivated by his gender.  His Title IX claims should therefore be dismissed.

Plaintiff's Fourteenth Amendment due process claim under 42 U.S.C. § 1983 and his five state-law claims, including claims for breach of contract, promissory estoppel, negligence, violation of the Unruh Civil Rights Act, and wrongful termination, also should be dismissed because the University is an "arm" of the State of California.  The Eleventh Amendment bars section 1983 claims against states.  It also bars state-law claims in federal court against states, unless a state

unequivocally consents to suit.  Plaintiff's section 1983 claim and state-law claims should therefore be dismissed with prejudice.

## II.     FACTUAL BACKGROUND[1]

### A.     The February 13, 2017 Incident

Plaintiff was an international graduate student at University of California, Los Angeles ("UCLA").[2]  (Compl. ¶ 12.)  In the Spring Quarter of 2014, Plaintiff met Jane Roe ("Roe") when she was enrolled as an undergraduate student in a chemistry class in which Plaintiff served as her teaching assistant.  (*Id.*)  Plaintiff and Roe began dating in summer 2014 and became engaged in December 2016.  (*Id.* ¶¶ 12, 14.)  In February 2017, Plaintiff and Roe had a falling out and terminated their relationship.  (*Id.* ¶¶ 15-18.)

On February 13, 2017, Roe came to Plaintiff's office on the UCLA campus unannounced.  (*Id.* ¶¶ 19-23.)  Roe brought with her a bag of items to return to Plaintiff and asked him to return her Social Security card, which she believed Plaintiff had.  (*Id.* ¶¶ 22, 25.)  Plaintiff and Roe met outside Plaintiff's office, and the encounter between them became loud and "caused a scene."  (*Id.* ¶ 23.)  Plaintiff refused to let Roe into his office and told Roe that he needed to leave to teach a class.  (*Id.* ¶¶ 24-26.)  Roe did not leave and stood in front of Plaintiff's office door. (*Id.* ¶¶ 26-30.)  Eventually, Plaintiff left to teach a class.  (*Id.* ¶ 30.)  Roe then contacted the UCLA Police Department ("UCPD") and reported that during the encounter Plaintiff had pushed her in the upper torso area and had grabbed her wrist and forearm.  (*Id.* ¶ 31.)  UCPD arrested Plaintiff following his class.  (*Id.* ¶ 32.)

---

[1] For purposes of this motion only, the University treats Plaintiff's allegations as true.

[2] Plaintiff is a Chinese national and English is not his first language.  (Compl. ¶¶ 12, 38.)

### B.   University Investigation

Roe met with UCLA's Interim Title IX Coordinator on February 20, 2017, and with a Title IX investigator, on April 13, 2017.[3]  (*Id.* ¶¶ 39, 44.)  The Title IX Office and Office of Student Conduct issued a Joint Notice of Charges against Plaintiff on May 10, 2017.  (*Id.* ¶ 48.)  In addition to charges related to the February 13, 2017 incident, the Notice of Charges included charges related to earlier conduct Roe reported to the Title IX Office.  (*Id.* ¶ 44.)  On May 10, 2017, the Office of the Dean of Students issued an interim suspension against Plaintiff pending resolution of the allegations in the Notice.  (*Id.* ¶ 49.)  Plaintiff appealed the interim suspension, and it was modified to allow Plaintiff to participate in certain activities on campus.  (*Id.* ¶ 50.)

Over the next four months, the University gathered evidence, interviewed witnesses, and provided Plaintiff opportunities to respond to the allegations, as well as review and respond to the information they gathered.  (*Id.* ¶¶ 51-63.)  On September 15, 2017, the Title IX Office and Office of Student Conduct issued a Joint Amended Notice of Charges.  (*Id.* ¶ 64.)  As related to the February 13, 2017 incident, the Amended Notice charged Plaintiff with one incident of Dating Violence in violation of the University of California Policy for Sexual Violence and Sexual Harassment ("UC SVSH Policy") Section II.B.1.c.i, and Section 102.08 (Conduct that Threatens Health or Safety) of the UCLA Student Conduct Code ("Code").  (*Id.* ¶¶ 65-66.)  After issuing the Amended Notice of Charges, the Title IX investigator informed Plaintiff that he would have another opportunity to review the summary of information on which she would rely in making her findings.  (*Id.* ¶ 68.)  Plaintiff again reviewed the information and provided a response.  (*Id.* ¶ 69.)

---

[3] The initial Title IX investigator assigned to the investigation was Danica Myers, but at some point, responsibility for the investigation was transferred to Sonia Shakoori.  (Compl. ¶ 55.)

On September 22, 2017, the Title IX investigator issued her Investigation Report.  (*Id.* ¶ 70.)  In her report, the investigator concluded that Plaintiff was responsible for the February 13, 2017 incident and that Roe was placed in reasonable fear of serious bodily injury.  (*Id.* ¶¶ 70, 78.)  Based on her findings, the Investigation Report recommended that there was sufficient evidence to find Plaintiff responsible for a violation of Section II.B.1.c.i (Dating Violence) of the UC SVSH Policy, and Sections 102.08 (Conduct that Threatens Health or Safety), 102.09 (Sexual Harassment), and 102.26 (Terrorizing Conduct) of the Code.  (*Id.* ¶ 84.)

## C.    Student Conduct Determination and Suspension

On September 29, 2017, Plaintiff provided a written statement to Associate Dean of Students Jasmine Rush, presenting factual and legal arguments why Rush should reject the findings of the Title IX investigator.  (*Id.* ¶ 91.)  On October 13, 2017, the University issued its decision accepting the investigator's recommended findings as to the allegations supporting the charges of Dating Violence and Conduct that Threatens Health or Safety, but not as to Sexual Harassment or Terrorizing Conduct.  (*Id.* ¶¶ 93-94.)  Based on the decision, the University issued a sanction of a two-year suspension.  (*Id.* ¶ 100.)

## D.    Plaintiff's Administrative Appeal

Plaintiff appealed the University's decision on October 27, 2017, alleging (1) that problems with translation materially affected the outcome of the investigation process; (2) that the University's findings were unreasonable; and (3) that the sanctions were disproportionate to the findings.  (*Id.* ¶¶ 104, 108, 110.)  On December 8, 2017, an appeal hearing was conducted before a three-member appeal body.  (*Id.* ¶ 115.)  Neither Roe nor Plaintiff testified at the hearing, but the appeal body did hear from other witnesses, including Dean Rush.  (*Id.* ¶¶ 116-17.)  On December 11, 2017, the Appeal Panel issued its decision affirming the University's decision and discipline in all respects.  (*Id.* ¶ 121.)  Plaintiff's suspension became

1   effective immediately upon the denial of his appeal.  (*Id.*)  As a result of the

2   suspension, Plaintiff lost his F-1 visa status.  (*Id.* ¶ 125.)

3         **E.**     **Plaintiff's Writ of Administrative Mandate Proceeding**

4         On February 13, 2018, Plaintiff filed a Petition for Writ of Mandamus under

5   Cal. Code Civ. Proc. § 1094.5 in Los Angeles Superior Court, alleging that the

6   University failed to grant him a fair hearing, committed a prejudicial abuse of

7   discretion, issued a decision that was not supported by the findings, and made

8   findings that were not supported by the evidence.  (*Id.* ¶ 123; *see also John Doe v.*

9   *The Regents of The Univ. of Cal.*, Case No. BS172217 (L.A. Super. Ct.).)  On April

10   13, 2018, the Superior Court issued a stay of the University's decision and sanction

11   against Plaintiff.  (Compl. ¶ 124.)  On May 22, 2018, the University filed a

12   Confession of Judgment, and judgment was entered and a writ issued on May 24,

13   2018.  (*Id.* ¶¶ 126, 128.)

14         **F.**     **Plaintiff's Claims**

15         Plaintiff filed this lawsuit against the University on December 6, 2019,

16   asserting eight causes of action under both federal and state law relating to his Title

17   IX investigation and proceedings.

18         **1.**     **Plaintiff Asserts Claims of Sex Discrimination Under Title IX**

19         Plaintiff asserts an "erroneous outcome" claim under Title IX of the

20   Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"), alleging that an

21   erroneous outcome occurred in the University's adjudication of his case due to

22   gender discrimination.  (Compl. ¶¶ 131-53.)  He also asserts a Title IX "selective

23   enforcement" claim, alleging that the University selectively enforced its policies

24   against him by initiating the Title IX proceeding and imposed a severe sanction

25   based on his gender.  (*Id.* ¶¶ 155-163.)

26         Plaintiff purports to base these claims of gender discrimination on a

27   "combination of internal institutional pressure, ongoing [U.S. Department of

28   Education Office of Civil Rights ("OCR")] investigations, and pressure from the

United States Department of Education, under a threat of recession of federal funds," which he alleges, "contributed to an overzealous prosecution and erroneous finding of responsibility against Plaintiff." (Compl. ¶ 152.) In support of this theory, Plaintiff relies on the following facts: (1) a 2011 "Dear Colleague Letter" issued by the OCR, which sounded a "call to action" for universities for taking actions to eliminate sexual violence and sexual assault (*id.* ¶¶ 144-146); (2) additional directives issued by the OCR in 2014 aimed at providing guidance on campus sexual misconduct policies and procedures (*id.* ¶ 147); (3) a White House report, titled "Not Alone," that advised that if schools were found in violation of Title IX they would risk losing federal funding, as well as OCR's and DOJ's authority to initiate investigations and litigation for such violations (*id.* ¶ 148); and (4) the testimony of then-Assistant Secretary of Education in June 2014 regarding its enforcement of the Dear Colleague Letter, including its hiring of additional investigators and ability to terminate federal funds. (*Id.* ¶ 149.)

### 2.     Plaintiff Asserts Various Other Federal and State Claims

Plaintiff asserts a claim for violation of due process under 42 U.S.C. § 1983, based on the University's initiation and adjudication of the Title IX proceeding. (Compl. ¶¶ 164-91.) He also asserts a variety of state-law claims for: (1) breach of contract, alleging the University's conduct during the Title IX investigation and adjudication constituted breaches of express and implied contracts with Plaintiff (*id.* ¶¶ 192-203); (2) promissory estoppel, based on the University's alleged violations of its policies, which he alleges constitute representations and promises by the University upon which he detrimentally relied (*id.* ¶¶ 204-10); (3) a state-law claim for negligence based on the University's alleged failure to provide a fair disciplinary process (*id.* ¶ 211-18); (4) violation of California's Unruh Civil Rights Act, Cal. Civ. Code § 51, alleging the University denied him of "advantages, facilities, privileges, and services" afforded to UCLA students based on his gender (*id.*

¶¶ 219-27); and (5) a wrongful termination claim based on his suspension allegedly causing him to lose his position as a lecturer at UCLA.  (*Id.* ¶¶ 228-33.)

## III.   LEGAL STANDARD

A defendant is entitled to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Under Federal Rule of Civil Procedure 8(a), to survive a Rule 12(b)(6) motion, a complaint must plead facts "to state a claim to relief that is plausible on its face."' *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009).  In evaluating a Rule 12(b)(6) motion, a court accepts as true all material facts alleged in the complaint and construes them in the light most favorable to the non-moving party.  *Gant v. Cty. of L.A.*, 772 F.3d 608, 614 (9th Cir. 2014).  A court does not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The same pleading standard applies to Title IX claims. *Austin*, 925 F.3d 1133 at 1136 (holding Rule 8(a) pleading standard applies to Title IX cases).

Likewise, where a motion under Rule 12(b)(1) challenges jurisdiction based only on the allegations of the complaint, the Court applies the same standards it would apply to a Rule 12(b)(6) motion.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

## IV.   ARGUMENT

### A.   Plaintiff's Title IX Claims Should Be Dismissed Because He Fails to Adequately Plead Gender Bias

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal finance assistance." 20 U.S.C. § 1681(a). Here, Plaintiff asserts two theories of Title IX liability: (1) erroneous outcome and (2) selective enforcement. Both theories require a plaintiff to show he faced discrimination "on the basis of sex." *Id.*; *Schwake v. Ariz. Bd. of Regents*, No. CV-15-00696-PHX-SPL, 2018 WL 1536388, at \*6 (D. Ariz. Mar. 29, 2018). The Ninth Circuit recently confirmed that, to survive a motion to dismiss claims based on these theories, a plaintiff must plead "nonconclusory allegations plausibly linking the disciplinary action to discrimination on the basis of sex." *Austin*, 925 F.3d at 1138. Plaintiff fails to do so—his Complaint is devoid of any allegations that plausibly suggest the University discriminated against Plaintiff on the basis of his gender. Accordingly, Plaintiff's Title IX claims should be dismissed.

### 1. Plaintiff Fails to Plead a Plausible Erroneous Outcome Claim

Plaintiff fails to state a claim based on an erroneous outcome because his Complaint contains only conclusory allegations regarding the existence of "federal pressure" on universities that are unconnected to his particular disciplinary proceeding. Plaintiff fails to plausibly allege that gender bias was the source of any erroneous outcome of his proceeding, and his erroneous outcome claim should be dismissed.

### (a) Courts require that plaintiffs allege that the outcome was flawed *due to* plaintiff's sex

To state an erroneous outcome claim, a plaintiff must: (1) "allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994), and (2) "articulate a[] basis to discern that the administration or outcome[] of the disciplinary proceeding[] w[as] flawed due to [the plaintiff's] sex." *Austin*, 925 F.3d at 1138. Gender bias can be shown through, for example, "statements by members of the disciplinary tribunal, statements by pertinent university officials, or

patterns of decision-making that also tend to show the influence of gender." *Yusuf*, 35 F.3d at 715.  In contrast, simply alleging that flaws in the proceeding led to an erroneous outcome, combined with conclusory allegations of gender bias, is insufficient to survive a motion to dismiss.  *Id.*

In *Austin*, the Ninth Circuit affirmed the dismissal of a Title IX claim under both erroneous-outcome and selective-enforcement theories brought by three male student athletes who had been found, in a university disciplinary proceeding, to have engaged in sexual misconduct at an off-campus party.  925 F.3d at 1135, 37-38.  In support of their claim that their disciplinary proceedings were affected by gender bias, the plaintiffs alleged that (1) there were campus protests relating to the victim's allegations of sexual assault; (2) the university president gave a speech related to the incident; and (3) that the university had not imposed discipline on any female students for sexual misconduct.  *Id.* at 1138.  The Ninth Circuit concluded that the first two allegations were insufficient because the complaint did not "make any plausible link connecting these events and the University's disciplinary actions to the fact that the student athletes are male."  *Id.*  It further concluded that the third allegation was insufficient because the complaint did "not claim that any female University students ha[d] been accused of comparable misconduct," and were "disciplined unequally."  *Id.*  The Ninth Circuit therefore affirmed the district court's dismissal of plaintiffs' Title IX claims because the complaint contained only "[a] recitation of facts without [a] plausible connection" to sex discrimination.  *Id.*

Similarly, courts have uniformly held that general allegations of federal pressure to address campus sexual misconduct are insufficient to plead gender bias, as such "pressure" does not support plausible inferences that the university succumbed to such pressure to render a biased outcome in a plaintiff's particular case.  For example, in *Doe v. Columbia College Chicago*, the Seventh Circuit rejected a plaintiff's argument that "the 'Dear Colleague' letter, pressure from the Office of Civil Rights investigations," and on-campus programming, including the

screening of a film about sexual assault, "combined to cause Columbia to implement anti-male policies to increase convictions of male students."  933 F.3d 849, 855 (7th Cir. 2019).  The court explained that in the first place, the "Dear Colleague Letter" "applies equally to male and female students accused of sexual assault."  *Id.* Further, the allegations were insufficient because they were not particular to plaintiff's case—"A plaintiff cannot rely on these generalized allegations alone . . . but must combine them with facts particular to his case to survive a motion to dismiss."  *Id.*  Other courts have held the same.  *See, e.g.*, *Doe v. Cummins*, 662 F. App'x 437, 453 (6th Cir. 2016) (holding allegation that "'Dear Colleague Letter' induced [the university] to discriminate against males in sexual-assault investigations in order to preserve federal funding . . . is insufficient to create a plausible claim of gender bias under Title IX"); *Doe v. Loh*, No. PX-16-3314, 2018 WL 1535495, at *9 (D. Md. Mar. 29, 2018) ("Doe's allegation of general pressure that the Dear Colleague letter supposedly exerted on *all* universities does not allow the inference that UMCP succumbed to such pressure, and that the pressure rendered a biased outcome in Doe's case."); *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 992 (D. Minn. 2017) (joining "the majority of federal courts in finding a general reference to federal pressure, by itself, is insufficient to show gender bias"); *cf. Doe v. Tr. of Boston Coll.*, 892 F.3d 67, 92 (1st Cir. 2018) (holding at summary judgment that argument that university's administrators "were influenced by outside pressure, in particular the U.S. Department of Education's April 2011 'Dear Colleague' Letter," was meritless because the plaintiffs failed to explain how the Letter "reflects or espouses gender bias").

Even where courts have found the "Dear Colleague Letter" relevant, they have only done so where the letter, combined with other case-specific allegations of gender bias, support a plausible inference of gender discrimination.  *See, e.g.*, *Doe v. Purdue Univ.*, 928 F.3d 652, 668-69 (7th Cir. 2019) (holding that the "letter, standing alone, is obviously not enough to get John over the plausibility line," but

concluding that the plaintiff had alleged additional facts "raising the inference that the [university] acted at least partly on the basis of sex in his particular case."). Moreover, numerous courts have held insufficient even more specific allegations of gender bias based on external pressure because allegations that "pressure from the federal government to investigate sexual assault allegations more aggressively, . . . says nothing about [a] [u]niversity's alleged desire to find men responsible *because they are men*." *Doe v. Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.*, 255 F. Supp. 3d 1064, 1077 (D. Colo. 2017) (concluding that allegations of "general pressure exerted by the Dear Colleague Letter or specific pressure exerted by an investigation directed at the University, or both," were insufficient to allege gender bias) (emphasis added); *Ruff v. Bd. of Regents of Univ. of N. M.*, 272 F. Supp. 3d 1289, 1302 (D.N.M. 2017) (concluding allegations of numerous student complaints regarding the University's failure to respond to reports of sexual assaults, local media coverage of the complaints, and that the university was facing a DOJ investigation motived the university to prosecute the allegations in plaintiffs' highly publicized sexual assault case were insufficient to support an inference of gender discrimination because they failed to "demonstrat[e] that outside pressure actually influenced UNM, not just to aggressively pursue sexual assault cases, but to do so in a manner biased against males."); *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 682 (M.D. Tenn. 2018) (explaining that "when courts consider allegations of external pressure, they look to see if a plaintiff has alleged facts demonstrating that it was pressure not only to 'aggressively pursue sexual assault cases, but to do so in a manner biased against males," which plaintiff's vague allegations of gender bias based on pressure from a "prior, nationally publicized incident of sexual misconduct" did not do.

       **(b)**    **Plaintiff fails entirely to allege any link, much less a plausible link, between the "federal pressure," the outcome in his proceeding, and the fact that he is male**

The allegations here are even less substantial than those the Ninth Circuit found *insufficient* in *Austin* or that the Seventh Circuit found insufficient in *Columbia College*.  Even assuming there was an erroneous outcome, Plaintiff fails to allege anything that plausibly shows that any error was "due to" his gender. *Austin*, 925 F.3d at 1138.  Just as in *Doe v. Columbia College Chicago*, OCR guidance and White House directives requiring campuses to address sexual misconduct "applies equally to male and female students accused of sexual assault." 933 F.3d at 855.  The allegations here are even less specific than those found insufficient in *Columbia College*, which included specific allegations regarding an OCR investigation and examples of on-campus programming. *Id*.  Similarly, the allegations in *Austin* that the university faced pressure—which were found insufficient to state a claim—were far more substantial than those alleged here.  In *Austin*, there were campus protests, local news coverage of the alleged sexual assault, and the university president gave a speech related to the incident.  925 F.3d at 1135, 38.  "Plaintiffs asserted that Defendants were presumed guilty because public pressure resulted in a biased investigation and hearing that deprived Plaintiffs of their educational opportunities based on their gender." *Austin v. Univ. of Or.*, No. 6:15-CV-02257-MIC, 2017 WL 4621802, at *2 (D. Or. June 7, 2017), *aff'd*, 925 F.3d 1133 (9th Cir. 2019).  Even so, the Ninth Circuit concluded the complaint failed to allege a plausible link connecting those events and the university's disciplinary actions to the fact the students were male.  925 F.3d at 1138.  Just as in *Columbia College* and in *Austin*, Plaintiff's Complaint fails to establish any plausible link between the alleged federal pressure on universities to investigate sexual assault claims, the disciplinary action against him, and his gender.

Plaintiff also alleges that "[a] pervasive atmosphere of anti-male bias within the Title IX enforcement personnel at the University of California has resulted in an

1    unprecedented amount of litigation in which the Superior Court of California has

2    repeatedly held, on numerous occasions, that the University deprived the male

3    student of a fair proceeding in adjudicating misconduct allegations."  Compl. ¶ 150.

4    This allegation is equally insufficient, however, because it is wholly conclusory and

5    says nothing about whether those male students were deprived of a fair proceeding

6    based on their gender.  *See Austin*, 925 F.3d at 1138 (affirming dismissal of

7    erroneous outcome claim because "complaint is missing any factual allegations that

8    show that sex discrimination was the source of any error").

9          Further, to the extent Plaintiff argues that the University's policies and

10   procedures applicable to students facing disciplinary proceedings are unfair, those

11   policies and procedures do not establish gender bias because they apply equally to

12   all students, regardless of gender.  *See Doe v. Wash. Univ.*, No. 4:19 CV 300 (JMB),

13   2020 WL 353587, at *15 (E.D. Mo. Jan. 21, 2020) (rejecting argument that

14   "university's sexual assault procedures are gender-biased" because "each set of

15   procedures expressly applies to students who commit the covered offenses

16   regardless of the student's gender").  Plaintiff's allegations that "UCLA offers far

17   fewer services and accommodations to accused students," compared to "accusers,"

18   and "does not allow anyone to advocate on behalf of an accused student," but

19   provides a "CARE advocate" for "accusers," Compl. ¶¶ 41-43, fails for the same

20   reason.  The services and accommodations offered to complainants (whom Plaintiff

21   refers to as "accusers") in disciplinary proceedings versus those that are offered to

22   respondents (whom Plaintiff refers to as the "accused") apply equally to all students

23   regardless of their gender.  *See Doe*, 2020 WL 353587, at *15.

24         Without any allegations showing a causal connection between the allegedly

25   erroneous outcome of Plaintiff's disciplinary proceeding and gender bias, Plaintiff

26   fails to state a Title IX erroneous outcome claim.  Plaintiff's first cause of action

27   must be dismissed.

28

### 2. Plaintiff Fails to Plead a Selective-Enforcement Claim

Plaintiff fails to state a claim based on selective enforcement because he again does not show his gender played a role in the decision to initiate his disciplinary proceeding or in the imposition of his two-year suspension.  To state a Title IX claim based on selective enforcement a plaintiff must allege, "'regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.'"  *Austin*, 925 F.3d at 1138 (quoting *Yusuf*, 35 F.3d at 715).  This requires a plaintiff to plead "that [a] similarly situated student of the opposite gender was treated more leniently." *Doe v. Regents of the Univ. of Cal.*, No. 2:15-CV-02478-SVW-JEM, 2015 WL 13755510, at *4 (C.D. Cal. Dec. 14, 2015); *see also Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015) ("To support a claim of selective enforcement, [a male plaintiff] must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University.").  "Without nonconclusory allegations that the male students were treated any differently than similarly situated female students based on sex, the selective enforcement theory fails." *Austin*, 925 F.3d at 1138.

Here, Plaintiff's selective-enforcement claim must be dismissed because his Complaint does not contain any non-conclusory allegations of gender bias or that he was treated differently than a similarly situated female student.  Plaintiff's only additional allegations supporting his selective-enforcement claim are:  (1) "the actions taken and decisions made by Defendant Regents in carrying out the Title IX investigation and adjudication process were informed by Plaintiff's gender, without regard to guilt or innocence," Compl. ¶ 159, (2) "the majority of Title IX cases at the University of California involve female complainants and male respondents," *id.* ¶ 160, and that (3) "Plaintiff was found responsible and subjected to a lengthy suspension because he is male," *id.*  ¶ 161.  These allegations are insufficient to state a plausible claim of selective enforcement.

First, Plaintiff's allegations that the "Title IX investigation and adjudication process were informed by Plaintiff's gender" and that Plaintiff was "subjected to a lengthy suspension because he was male" are merely "conclusory statements about sex discrimination," that have repeatedly been found insufficient to state a claim. *See Austin*, 925 F.3d at 1138 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Second, Plaintiff's allegation that there are more male respondents in Title IX proceedings than females are nearly identical to the allegations deemed insufficient in *Austin*. In *Austin*, the plaintiffs alleged that "because the University disciplines male students for sexual misconduct but never female students, it is biased against men." *Austin*, 925 F.3d at 1138. The Ninth Circuit held that such allegations were insufficient because they did not show that "any female University students ha[d] been accused of comparable misconduct, and thus fail[] to allege that similarly situated students—those accused of sexual misconduct—are disciplined unequally." *Id.* The Court further explained that "simply because enforcement is asymmetrical does not mean that it is selectively so." *Id.* Indeed, as other courts have recognized, a university "is not responsible for the gender makeup of those who are accused *by other students* of sexual misconduct." *King v. Depauw Univ.*, No. 2:14-CV-70-WTL-DKL, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014).

Further, even if circumstantial evidence of gender bias were sufficient to state a selective-enforcement claim, Plaintiff's only other allegations of gender bias are those alleged in his erroneous outcome claim, and are insufficient for the same reasons identified above. *See supra* § IV.A.1. In the absence of any allegations showing that the University was influenced by Plaintiff's gender in initiating its Title IX proceeding or in sanctioning him, Plaintiff fails to state a Title IX selective-enforcement claim. Thus, Plaintiff's second cause of action must be dismissed.

### B.     Plaintiff's § 1983 Claim and State-Law Claims Are Barred by the Eleventh Amendment

#### 1.     Plaintiff's § 1983 Claim Is Barred by the Eleventh Amendment

Plaintiff purports to bring a Fourteenth Amendment due process claim against the University under 42 U.S.C. § 1983.  Section 1983 creates a right of action against "[e]very person" who under color of state law, violates a party's federal rights.  State entities are not "persons" subject to suit under Section 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Under the Eleventh Amendment, the State of California is immune from Section 1983 suits, as are entities considered to be an "arm" of the state.  *Armstrong v. Myers*, 964 F.2d 948, 949-50 (9th Cir. 1992) (per curiam).  The University of California is an "arm" of the State of California and is therefore not subject to suit under Section 1983.  *See, e.g.*, *Armstrong,* 964 F.2d at 949-50 ("The Regents . . . is an arm of the state for Eleventh Amendment purposes, and therefore is not a 'person' within the meaning of section 1983."); *Thompson v. City of L.A.*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds by Bull v. City of L.A.*, 595 F.3d 964 (9th Cir. 2010) (same); *BV Eng'g v. Univ. of Cal., L.A.*, 858 F.2d 1394, 1395 (9th Cir. 1988) (same); *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982) (same).  Plaintiff's third cause of action must therefore be dismissed with prejudice.

#### 2.     Plaintiff's State-Law Claims Are Barred by the Eleventh Amendment

Plaintiff also purports to bring breach of contract, promissory estoppel, negligence, Unruh Civil Rights Act, and wrongful termination claims against the University.  These claims are also barred by the Eleventh Amendment.  The Eleventh Amendment bars state-law claims in federal court against states, unless a state unequivocally consents to suit.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) (holding that the Eleventh Amendment bars "state-law claims brought into federal court under pendent jurisdiction"); *see also Doe v.*

1   *Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153-54 (9th Cir. 2018) (holding

2   "Eleventh Amendment principles require dismissal of Doe's [Cal. Code Civ. Proc.]

3   § 1094.5 writ petition, which is a state law claim").

4          As explained above, the University of California is "considered to be [an]

5   instrumentalit[y] of the state . . . and therefore enjoy[s] the same immunity as the

6   state of California" for purposes of the Eleventh Amendment.  *BV Eng'g*, 858 F.2d

7   at 1395; *see also Doe*, 891 F.3d at 1153-54.  The University has not consented to

8   suit for any of Plaintiff's claims.  Plaintiff's state-law claims therefore are barred by

9   the Eleventh Amendment.  Courts routinely dismiss state-law claims brought against

10  states and their instrumentalities, like those brought by Plaintiff, on Eleventh

11  Amendment grounds, including claims under the Unruh Civil Rights Act.  *See, e.g.*,

12  *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1133-34 (9th Cir. 2006) (holding

13  plaintiff's Unruh Civil Rights Act claim and other state-law claims were barred by

14  the Eleventh Amendment); *Steshenko v. Albee*, 42 F. Supp. 3d 1281, 1288-89 (N.D.

15  Cal. 2014) (dismissing state-law tort claims brought against Board of Trustees of the

16  California State University as barred by the Eleventh Amendment).  Plaintiff's

17  fourth, fifth, sixth, seventh, and eighth causes of action must therefore be dismissed

18  with prejudice.

19  **V.     CONCLUSION**

20         For the foregoing reasons, Plaintiff's Complaint should be dismissed in its

21  entirety, with prejudice.

22

23

24

25

26

27

28

1   DATED:  February 13, 2020          MUNGER, TOLLES & OLSON LLP
2                                                             HAILYN J. CHEN
                                                              ASHLEY D. KAPLAN
3

4

5                                                 By:    _____/s/ Ashley D. Kaplan_____
6                                                         ASHLEY D. KAPLAN
                                                  Attorneys for Defendant The Regents of the
7                                                 University of California

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed electronically on February 13, 2010.  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.

*/s/ Ashley D. Kaplan*
ASHLEY D. KAPLAN

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF JOHN DOE'S COMPLAINT