UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | CV 19-10385 PSG (MRWx) | Date | July 14, 2020 |
| Title | John Doe v. The Regents of the University of California et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** Order GRANTING Defendant's motion to dismiss

Before the Court is Defendant The Regents of the University of California's ("Defendant") motion to dismiss. *See* Dkt. # 16 ("*Mot*"). Plaintiff John Doe ("Plaintiff") has opposed the motion, *see* Dkt. # 17 ("*Opp.*"), and Defendant replied, *see* Dkt. # 21 ("*Reply*").[1] The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. After considering the moving, opposing, and reply papers, the Court **GRANTS** the motion to dismiss.

I.  Background

    A.  Title IX Proceedings Against Plaintiff at UCLA

This is a Title IX case in which Plaintiff alleges that Defendant discriminated against him based on his gender before suspending him from the University of California, Los Angeles ("UCLA"). Plaintiff was a graduate student at UCLA. *See First Amended Complaint*, Dkt. # 16 ("*FAC*"), ¶¶ 13–119. He met Jane Roe ("Roe") during the spring of 2014 when Plaintiff was her teaching assistant. *See id.* ¶ 13. They began dating shortly thereafter and became engaged in December 2016. *See id.* ¶¶ 14–15. However, they terminated their relationship in February 2017. *See id.* ¶¶ 16–18.

After their breakup, Plaintiff and Roe were to meet in-person on campus after Plaintiff finished teaching on February 13, 2017. *See id.* ¶ 19. Before the meeting, Plaintiff learned that

---

[1] Defendant submitted a request for judicial notice with its reply. *See* Dkt. # 22. However, the Court declines to determine whether the materials Defendant submitted are judicially noticeable because, even if they are not, the Court nonetheless holds that the FAC fails to state a claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10385 PSG (MRWx) | Date | July 14, 2020 |
|---|---|---|---|
| Title | John Doe v. The Regents of the University of California et al. | | |

Roe had withdrawn the entire balance of their joint bank account. *See id.* ¶ 21. Right before Plaintiff left to teach his class, Roe knocked on his door; Plaintiff answered and refused to let her in. *See id.* ¶¶ 22–26. Plaintiff tried to leave to teach and told Roe that he would return any property of hers that he had when his class was over, but Roe blocked the doorway. *See id.* ¶¶ 29–31. She then followed him and tried to prevent him from entering his classroom. *See id.* ¶ 31. After he finished teaching, Plaintiff learned that Roe had called the police, and he was arrested for domestic battery. *See id.* ¶¶ 32–33.

Roe lodged a Title IX complaint against Doe. *See id.* ¶¶ 40–48. Although Roe was no longer a UCLA student, she said she was a student in the complaint. *See id.* ¶ 40. She alleged thirteen instances of misconduct. *See id.* ¶ 45. In May 2017, UCLA's Title IX Office and the Office of Student Conduct issued a joint Notice of Charges to Plaintiff, charging him with violations that included dating violence, sexual harassment, terrorizing conduct, and sexual assault. *See id.* ¶ 49. The Dean of Students then suspended Plaintiff and banned him from UCLA property. *See id.* ¶ 50.

Title IX investigator Sonia Shakoori handled Plaintiff's investigation. *See id.* ¶ 56. After Shakoori met with Plaintiff, Roe, and two witnesses, UCLA amended the Notice of Charges in September 2017 to include more incidents of misconduct. *See id.* ¶¶ 57–61. Shakoori provided Roe and Plaintiff with an opportunity to review and respond to her summation of evidence before issuing her report. *See id.* ¶ 68. She concluded that Plaintiff was responsible for the February 13, 2017 incident, that he placed Roe in fear of serious bodily injury, and that Plaintiff was responsible for several violations of the UCLA Student Conduct Code, including dating violence, conduct that threatens health or safety, sexual harassment, and terrorizing conduct. *See id.* ¶¶ 77–89. Associate Dean of Students Jasmine Rush suspended Plaintiff from UCLA for two years. *See id.* ¶ 99.

Plaintiff appealed the suspension decision in October 2017. *See id.* ¶ 103. After an appeal panel reviewed the investigation findings and heard from witnesses including Dean Rush (but not Plaintiff or Roe), the panel affirmed UCLA's decision. *See id.* ¶¶ 112–14. In February 2018, Plaintiff filed a petition for writ of mandamus against Defendant in Los Angeles Superior Court, alleging that Defendant had failed to grant him a fair hearing required by Code Civ. Proc., § 1094.5, committed a prejudicial abuse of discretion, failed to proceed in the manner required by law, issued a decision that is not supported by the findings, and made findings that are not supported by the evidence. *See id.* ¶ 122. Defendant filed a confession of judgment in May 2018, and a writ issued thereafter. *See id.* ¶¶ 125, 128.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10385 PSG (MRWx) | Date | July 14, 2020 |
|---|---|---|---|
| Title | John Doe v. The Regents of the University of California et al. | | |

B.  Plaintiff's Allegations of Bias

There were several sources of anti-male bias that allegedly tainted the proceedings against Plaintiff. *See id.* ¶¶ 146–87. As far as external pressure, Plaintiff points to a guidance letter that the U.S. Department of Education's Office for Civil Rights ("OCR") issued in April 2011, commonly known as the "Dear Colleague Letter," ("DCL") as well as follow-up guidance that OCR issued in 2014. *See id.* ¶¶ 146–48. The DCL issued a "call to action" to universities nationwide on the issue of campus sexual assault. *See id.* ¶ 148. The White House and OCR threatened to withhold federal funds from schools that did not comply with Title IX. *See id.* ¶ 151. Plaintiff connects this guidance to "[a] pervasive atmosphere of anti-male bias within the Title IX enforcement personnel at the University of California." *See id.* ¶ 154. Events on campus that discussed toxic masculinity, scholarships that prioritized female applicants over male applicants, and statements from officials, including Shakoori, about needing "to teach young boys and men how to express their feelings and how to handle others' emotions" demonstrated an internal pattern and practice of anti-male bias at UCLA. *See id.* ¶¶ 154–68.

Along with these external and internal pressures, Plaintiff also alleges that there were specific instances of bias in his case. Shakoori showed anti-male bias toward Plaintiff when she downplayed or ignored Roe's falsehoods and when she made findings of policy violations that were not disclosed to Plaintiff. *See id.* ¶¶ 171–72. In addition, UCLA Respondent Coordinator Jason Zeck advised Plaintiff that no female has ever fabricated allegations against an ex-boyfriend in a Title IX setting. *See id.* ¶ 161. Finally, Dean Rush displayed gender bias when she stated that she would have invited Roe into his office if she were in his shoes and that UC policy required a minimum two-year suspension for dating violence of any type. *See id.* ¶ 181.

C.  Procedural History

On December 6, 2019, Plaintiff filed this action against Defendant. *See generally Complaint*, Dkt. # 1 ("*Compl.*"). Plaintiff brought eight causes of action under a combination of Title IX, the Fourteenth Amendment, and state law. *See generally id.* Defendant moved to dismiss, and the Court granted the motion on April 9, 2020. *See April 9, 2020 Order*, Dkt. # 15 ("*April 2020 Order*), at 9. The Court dismissed the Title IX claims because Plaintiff failed to allege that his gender played a role in either the decision to initiate proceedings against him, or in their outcome. *See id.* at 5–7. The Court also dismissed Plaintiff's Fourteenth Amendment and state law claims as barred under the Eleventh Amendment. *See id.* at 7–8. The Court granted leave to amend the Title IX claims only. *See id.* at 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10385 PSG (MRWx) | Date | July 14, 2020 |
|---|---|---|---|
| Title | John Doe v. The Regents of the University of California et al. | | |

Plaintiff filed his First Amended Complaint ("FAC") on May 8, 2020, alleging the following causes of action:

> First Cause of Action: Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., Erroneous Outcome. *FAC* ¶¶ 130–87.
>
> Second Cause of Action: Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., Selective Enforcement. *Id.* ¶¶ 188–203.

Defendant now moves to dismiss the FAC in its entirety. *See generally Mot.*

II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

III. Discussion

Title IX prohibits sex-based discrimination at all educational institutions receiving federal financial assistance. 20 U.S.C. § 1681(a). That prohibition extends to all operations of such an institution. *Id.* § 1687. Among other things, "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138–39 (9th Cir. 2019). Here, Plaintiff brings two Title IX claims: one on an erroneous outcome theory, and one on a selective enforcement theory. *See FAC* ¶¶ 130–203. The Court takes each claim in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10385 PSG (MRWx) | Date | July 14, 2020 |
|---|---|---|---|
| Title | John Doe v. The Regents of the University of California et al. | | |

    A.    <u>First Cause of Action: Erroneous Outcome</u>

    A plaintiff proceeding on an erroneous outcome theory must allege facts "sufficient to cast some articulable doubt on the accuracy of the outcome," as well as "articulate a basis to discern that the administration of the disciplinary proceedings were flawed due to the" plaintiff's gender. *Austin*, 925 F.3d at 1138; *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). The complaint must include facts indicating "that sex discrimination was the source of any error." *Austin*, 925 F.3d at 1138.

    In *Austin*, the Ninth Circuit upheld the dismissal of a Title IX claim because the plaintiffs had not properly alleged gender bias. *Id.* at 1139. The plaintiffs alleged that campus protests related to the victim's allegations of sexual assault, a speech from the university president on the incident, and the fact that the university had not imposed discipline on any female students for sexual misconduct created a basis to discern that the university's Title IX investigation was flawed due to the plaintiffs' gender. *Id.* at 1138. The Ninth Circuit disagreed and held that these allegations did not "show that sex discrimination was the source of any error." *Id.* "The erroneous outcome theory . . . fails because the [plaintiffs] do not articulate any basis to discern that the administration or outcomes of the disciplinary proceedings were flawed due to the[ir] sex." *Id.*

    Defendant argues that Plaintiff again fails to allege that sex discrimination was the source of any error in his case. It contends that merely citing the DCR and other pressure from OCR is insufficient to plead gender bias. *See Mot.* 10–12. As to Plaintiff's allegations about events at UCLA and other internal pressures, Defendant responds that Plaintiff fails to connect these events to bias in his particular proceeding. *See id.* 12–16. Finally, Defendant argues that the statements from Shakoori and Zeck do not demonstrate anti-male bias because Shakoori's statement did not relate to sexual assault, and Plaintiff does not allege that Zeck had any decision-making power in his proceeding. *See id.* 16–17. Plaintiff counters that his allegations of external and internal pressure, when combined with statements and facts about his proceeding, demonstrate that sex discrimination was the source of error. *See Opp.* 17–25.

    The Court concludes that Plaintiff has once again failed to allege that any error in the outcome of his case was due to his gender. Akin to his initial complaint, the bulk of Plaintiff's allegations in the FAC concern the DCL, as well as internal patterns and practices at UCLA. *See FAC* ¶¶ 146–68. However, like the plaintiffs in *Austin*, Plaintiff "does not make any plausible link connecting these events and the University's disciplinary actions to the fact that [he is] male." *See id.* at 1138. Moreover, while some of Plaintiff's allegations, such as those about

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10385 PSG (MRWx) | Date | July 14, 2020 |
|---|---|---|---|
| Title | John Doe v. The Regents of the University of California et al. | | |

events on toxic masculinity and statements about sexual assault, have some connection to gender, many do not. For example, it is not evident that the alleged shortcomings in Plaintiff's proceedings, such as Rush's statements about the punishment length, the failure to allow certain testimony or witness interviews, and the impact of translation issues on the outcome, had anything to do with Plaintiff's gender. *See id.* ¶¶ 53, 73, 115, 176, 180; *Doe v. Trustees of Princeton Univ.*, No. 3:19-CV-07853 BRM TJB, 2020 WL 967860, at *3 (D.N.J. Feb. 28, 2020) ("Although Doe has thoroughly detailed the problems he alleges plagued his disciplinary process, none of Doe's allegations show Doe's sex is the reason for these shortcomings."). As the Ninth Circuit put it, "[j]ust saying so is not enough." *See Austin*, 925 F.3d at 1138.

Plaintiff does include some gender-based allegations that were particular to his proceedings, but these, taken as true, do not convince the Court that sex discrimination was the source of any error. Starting with Shakoori's tweet about the need "to teach young boys and men how to express their feelings and how to handle others' emotions," "[m]erely being a feminist, being affiliated with a gender-studies program, or researching sexual assault does not support a reasonable inference than an individual is biased against men." *See FAC* ¶¶ 154–68; *Doe v. Miami Univ.*, 882 F.3d 579, 593 n.6 (6th Cir. 2018). Next, Zeck's statement to Plaintiff that no female has ever fabricated allegations against an ex-boyfriend in a Title IX setting falls short because, like the university president in *Austin*, Plaintiff does not allege that Zeck had any decision-making authority in his case. *See FAC* ¶ 161; *Austin*, 925 F.3d at 1138. Therefore, because Plaintiff has not articulated a basis to discern that the administration of the disciplinary proceedings was flawed due to his gender, his erroneous outcome claim fails. *See Austin*, 925 F.3d at 1138.

Accordingly, the Court **GRANTS** the motion to dismiss this claim.

B. <u>Second Cause of Action: Selective Enforcement</u>

"[A selective enforcement] claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Austin*, 925 F.3d at 1138 (internal quotation marks and citations omitted). However, "[j]ust saying so is not enough." *Id.* "A recitation of facts without plausible connection to gender is not cured by labels and conclusory statements about sex discrimination." *Id.*

The Court concludes that Plaintiff's second cause of action also once again fails. In the FAC, Plaintiff primarily relies on conclusory allegations that female respondents were treated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10385 PSG (MRWx) | Date | July 14, 2020 |
|---|---|---|---|
| Title | John Doe v. The Regents of the University of California et al. | | |

differently than male respondents and that he was punished "based on archaic stereotypes about males." *See FAC* ¶¶ 192, 197. As the Court held previously, these allegations are insufficient to allege that Plaintiff "was treated differently than similarly situated members of the opposite gender, or that the disciplinary policies were biased against Plaintiff based on his gender." *See Doe v. Regents of the Univ. of Cal.*, No. 2:15-CV-02478 SVW (JEMx), 2015 WL 13755510, at *3 (C.D. Cal. Dec. 14, 2015).

In support of this claim, Plaintiff also makes allegations about the disproportionate gender balance in Title IX enforcement at UCLA. Specifically, Plaintiff alleges that from July 2016 to June 2017 only 17 percent of respondents in Title IX proceedings at UCLA were female, and from July 2017 to June 2018 only 11 percent of respondents were female. *See FAC* ¶¶ 162–63. But, the Ninth Circuit held in *Austin* that "[s]imply because enforcement is asymmetrical does not mean that it is selectively so." *See Austin*, 925 F.3d at 1138. Without allegations "that any female University students have been accused of comparable misconduct" and were disciplined unequally, Plaintiff fails to allege his selective enforcement claim. *See id.*

Ultimately, the Court **GRANTS** the motion to dismiss this claim.

IV.   Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Here, the Court has once again concluded that Plaintiff's first and second causes of action are inadequately pleaded. Because the Court has already allowed Plaintiff leave to amend once, and Plaintiff's claims remain inadequately pleaded, the Court finds that further leave to amend will be futile. Accordingly, the Court **DENIES** Plaintiff leave to amend the first and second causes of action.

V.   Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10385 PSG (MRWx) | Date | July 14, 2020 |
|---|---|---|---|
| Title | John Doe v. The Regents of the University of California et al. | | |

This order closes the case.

**IT IS SO ORDERED.**